DETROIT TRUST COMPANY, JENNIE E. CROWLEY AND DANIEL CROWLEY, EXECUTORS OF THE WILL OF JOSEPH J. CROWLEY, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35472. Promulgated January 22, 1932.

*Raymond H. Berry, Esq.,* and *C . F. Stanton, Esq.,* for the petitioner.

*Harold Allen, Esq.,* and *L. H. Rushbrook, Esq.,* for the respondent.

344

OPINION.

MURDOCK: There is but one thing to be determined in this case, namely, the value of the 11,010 shares of Crowley, Milner & Company common stock on November 1, 1925, the date of the owner's death. His executors returned this stock for Federal estate-tax purposes at $200 per share. The Commissioner increased this value to $275 per share. At the close of the hearing the Commissioner amended his pleadings to claim that the stock was worth $310 per share, and the petitioner then by amendment, claimed that the value was not in excess of $180 per share. We can see no reasonable basis for the value of $275 placed on the stock by the Commissioner and the claim for a value of $310 is not supported by the evidence.

Evidence was introduced of many facts and circumstances which are too remote from the date of death to have any real probative value. In addition, the record contains the testimony of two witnesses who gave opinions as to the value of the stock. One was Jones and the other an investment banker of Detroit. The latter reached his conclusion principally from a consideration of data furnished him shortly before the hearing. He did his best to value the stock and stated that in his opinion it was worth $190 per share on November 1, 1925. We feel that an extended discussion of the strength and weakness of various parts of his testimony is unnec-

essary because there is better evidence of value in the record than the opinion of this expert witness. Cf. *Andrews* v. *Commissioner*, 38 Fed. (2d) 55.

Jones placed the value of the stock at the decedent's death at book value less Christmas earnings. But what Jones did is far more convincing than what Jones said. Two months and twenty days after Crowley's death, Jones agreed to buy 2,450 shares of stock from Emery. This sale was to date back for its effect to some date in 1924 which is not disclosed by the record. Jones was to pay interest and receive all dividends from that date. The interest just about offsets the dividend so far as we can see. Here was a meeting of the minds of a purchaser and a seller, both familiar with the facts, and neither, so far as we know, forced to buy or sell. The situation had not materially changed from the date of the decedent's death except that the corporation had conducted its business through a Christmas season. We do not know whether the results of this Christmas season were better or worse than might have been anticipated on November 1, 1925. It seems fair to assume that they were neither. This agreement was reached with full knowledge of the pending suit. It involved a minority interest. The price agreed upon was $250 per share. The last sale preceding the decedent's death was that made by the Milner estate to Emery on October 25, 1924. This was about one year before the decedent's death. The price agreed upon was $250 per share.

We are convinced on the record before us that the value of the decedent's stock at the date of his death was $250 per share. In reaching this conclusion we have considered not only the evidence discussed above, but all of the other evidence, including that relating to the location of the store, its history, prospects, dividends, earnings and financial condition, the nature of the business in which it was engaged, and the pending litigation.

*Judgment will be entered under Rule 50.*